1  C. Anthony Mulrain, *pro hac vice*
   email amulrain@gordonrees.com
2  GORDON & REES LLP
   The Pinnacle Building, 5th Floor
3  Atlanta, Georgia 30326
   tel (404) 869-9054 / fax (678) 389-8475
4
5  Richard P. Sybert, CA Bar No. 80731
   email rsybert@gordonrees.com
   Yuo-Fong C. Amato, CA Bar No. 261453
6  email bamato@gordonrees.com
   GORDON & REES LLP
7  633 W. Fifth Street, 52nd Floor
   Los Angeles, California 90071
8  tel (213) 576-5000/ fax (213) 680-4470
9  Attorneys for Plaintiff
   GILBERT J. ARENAS, JR.
10

11              UNITED STATES DISTRICT COURT

12              CENTRAL DISTRICT OF CALIFORNIA

13

14  GILBERT J. ARENAS, JR., an individual,  ) CASE NO.  11-cv-5279 DMG -
                                            )            PJW
15                          Plaintiff,      )
          vs.                               ) **MEMORANDUM OF POINTS**
16                                          ) **AND AUTHORITIES IN**
                                            ) **SUPPORT OF PLAINTIFF'S**
17  SHED MEDIA US INC., a Delaware          ) **MOTION FOR**
    corporation; LAURA GOVAN,               ) **PRELIMINARY INJUNCTION**
    an individual; and DOES 1 through 10,   )
18  inclusive,                              )
                                            ) Date:      August 22, 2011
19                          Defendants.     ) Time:      9:30 a.m.
                                            ) Dept.:     7
20  _____)

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................1

II.    FACTS ..................................................................................................2

III.   ARGUMENT .........................................................................................5

       A.    Legal Standard for Issuing a Preliminary Injunction .........................5

       B.    A Preliminary Injunction Should Issue
             Based on Common Law Misappropriation of Likeness ......................5

             1.    Plaintiff Will Likely Succeed on the Merits ...........................5

                   a)    Defendants Use Plaintiff's Identity ................................5

                   b)    Defendants Misappropriate Plaintiff's
                         Identity to Their Advantage ...........................................8

                   c)    Plaintiff Did Not Consent to Defendants'
                         Misappropriation............................................................8

                   d)    Defendants' Misappropriation Results in
                         Injury to Plaintiff ...........................................................8

                   e)    Defendants' Misappropriation Is Not
                         Protected by the First Amendment ..............................10

                         (1)    Defendants' Use of Plaintiff's Identity
                                Is Not Sufficiently Related to Plaintiff ...............10

                         (2)    Defendants' Use of Plaintiff's Identity
                                Is Primarily Exploitative and Not
                                Transformative....................................................11

                         (3)    Defendants' Use of Plaintiff's Identity
                                Is Not Truthful; Defendants Acted with
                                Actual Malice .....................................................11

                   f)    Defendants' Misappropriation Does Not
                         Constitute "Incidental Use".........................................13

             2.    Plaintiff Is Threatened with Irreparable Harm.......................14

             3.    The Balance of Hardships Weighs in Favor of Plaintiff ..........15

**TABLE OF CONTENTS (cont'd)**

4.    All the Factors Weigh in Plaintiff's Favor ...............................16

C.    A Preliminary Injunction Should Also Issue
Based on Trademark Infringement ......................................................16

1.    Plaintiff Will Likely Succeed on the Merits ...........................16

a)    Defendants' Use of Plaintiff's Trademarks
Is Confusingly Similar .................................................16

a)    Defendants' Use of Plaintiff's Trademarks
Does Not Constitute Nominative Fair Use ...................18

2.    Plaintiff Is Threatened with Irreparable Harm .......................19

3.    The Balance of Hardships Weighs in Favor of Plaintiff ..........19

4.    All the Factors Weigh in Plaintiff's Favor ...............................19

D.    A Bond Should Not Be Required or Should Be Minimal ..................19

IV.    **CONCLUSION** ........................................................................................20

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*Abdul-Jabbar v. General Motors Corp.*,
4
      85 F.3d 407 (9th Cir. 1995)...........................................................5, 8, 9

5

*Abercrombie & Fitch Co. v. Moose Creek, Inc.*,
6
      486 F.3d 629 (9th Cir. 2007)..................................................................5

7

*Ali v. Playgirl, Inc.*,
      447 F.Supp. 723 (S.D.N.Y. 1978) ....................................................14-15
8

9

*Aligo v. Time-Life Books, Inc.*,
      1994 U.S.Dist. LEXIS 21559 (N.D.Cal. Dec. 19, 1994) .............................13

10

*American Int'l Group, Inc. v. American Int'l Bank*,
11
      926 F.2d 829 (9th Cir. 1991)................................................................17

12

*Brookfield Communs. v. W. Coast Entm't Corp.*,
13
      174 F.3d 1036 (9th Cir. 1999)..............................................................17

14

*Carson v. Here's Johnny Portable Toilets, Inc.*,
15
      698 F.2d 831 (6th Cir. 1983) ............................................................ 6-7

16

*Comedy III Productions, Inc. v. Gary Saderup, Inc.*,
17
      25 Cal.4th 387 (2001) .....................................................................11

18

*Downing v. Abercrombie & Fitch*,
19
      265 F.3d 994 (9th Cir. 2001) .......................................................16, 17-18

20

*Goto.com, Inc. v. Walt Disney Co.*,
21
      202 F.3d 1199 (9th Cir. 2000)..............................................................5

22

*Grant v. Esquire, Inc.*,
      367 F.Supp. 876 (S.D.N.Y. 1973) ..........................................................10
23

24

*Hoffman v. Capital Cities/ABC, Inc.*,
      255 F.3d 1180 (9th Cir. 2001)..............................................................12

25

*Jorgenson v. Cassiday*,
26
      320 F.3d 906 (9th Cir. 2003)................................................................19

27

*Leverton v. Curtis Pub. Co.*,
28
      192 F.2d 974 (3d Cir. 1951)................................................................10

# TABLE OF AUTHORITIES (cont'd)

**Cases (cont'd)**

*Marder v. Lopez,*
     450 F.3d 445 (9th Cir. 2006).................................................................9

*Motschenbacher v. R.J. Reynolds Tobacco Co.,*
     498 F.2d 821 (9th Cir. 1974).........................................................6, 8, 9

*New Kids on the Block v. New America Publishing, Inc.,*
     971 F.2d 302 (9th Cir. 1992)...............................................................18

*Page v. Something Weird Video,*
     960 F.Supp. 1438 (C.D.Cal. 1996) .................................................11-12

*Preston v. Martin Bregman Prods., Inc.,*
     765 F.Supp. 116 (S.D.N.Y. 1991) .......................................................13

*Rodeo Collection Ltd. v. West Seventh,*
     812 F.2d 1215 (9th Cir. 1987)...............................................................5

*White v. Samsung Electronics America, Inc.,*
     971 F.2d 1395 (9th Cir. 1992)...........................................7, 8, 17-18

*Yeager v. Cingular Wireless LLC,*
     673 F.Supp.2d 1089 (E.D.Cal. 2009) ......................................10, 12, 13, 14

**Constitution**

U.S. CONST. amend. I................................................................10, 11, 12, 13

**Statutes**

15 U.S.C. § 1115(b)(4) ...............................................................................18

15 U.S.C. § 1125(a) ....................................................................................16

**Rule**

Fed. R. Civ. P. 65(c) ...................................................................................18

**Secondary**

Restatement (Second) of Torts § 652C, cmt. d........................................14

Restatement (Third) of Unfair Competition § 47 cmt. c ........................10

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Defendants Shed Media US Inc. ("Shed Media") and Laura Govan ("Govan") (collectively, "Defendants") misappropriated Plaintiff Gilbert J. Arenas, Jr.'s ("Plaintiff" or "Arenas") identity and infringed on Plaintiff's trademarks by featuring Govan on the reality television show, "Basketball Wives: Los Angeles," which will air on the VH1 channel on August 29, 2011.  With the show "Basketball Wives: Los Angeles" (and its predecessor, "Basketball Wives") Defendants intentionally leverage the interest associated with professional basketball and basketball players to generate more viewership, ratings, and revenue—all by exploiting Plaintiff's identity and trademarks.

As shown below, it is clear that Defendants' misappropriation and infringement is intentional, and will continue until stopped by this Court. Therefore, Plaintiff requests that this Court order Defendants and those in active concert with them, including the parties themselves, their officers, agents, servants, employees, attorneys, independent contractors, partners, or any other person having any involvement with the "Basketball Wives: Los Angeles" show, until trial or further order of this Court, to refrain from misappropriating Plaintiff's identity and infringing on Plaintiff's trademarks as follows:

1.   Using the marks "GILBERT J. ARENAS, JR.," "GILBERT ARENAS," "GIL ARENAS," "AGENT ZERO," "AGENT ARENAS," and "HIBACHI" (or any variants sufficient to identify Plaintiff") in commerce in association with any reality television show;

2.   For any television show that includes the appearance of Govan, using the term "Basketball Wives" or anything that would suggest affiliation with basketball players such as Plaintiff (for example, and without

limitation, "NBA Spouses") in the title, promotional text, or the show itself; and

3.  For any television show that includes the appearance of Govan, using any other means to suggest affiliation with basketball players such as Plaintiff, including without limitation, the inclusion of more than two participants who are known to be affiliated with basketball players.

## II.    FACTS

Plaintiff is a professional athlete who plays basketball for the National Basketball Association ("NBA") team, Orlando Magic.  Plaintiff is one of the most well-known players in the NBA.  Complaint ¶ 9.  He is known as GILBERT J. ARENAS, JR., GILBERT ARENAS, and GIL ARENAS, and by his nicknames, "AGENT ZERO," "AGENT ARENAS," and "HIBACHI"—all of these serve as his trademarks as well.  Declaration of Gilbert J. Arenas, Jr. ("Arenas Decl.") ¶ 2.

Plaintiff has played professional basketball in the NBA since 2001.  *Id.*, ¶ 3. In 2003, he received the "NBA Most Improved Player Award" and was named "Most Valuable Player" of the Rookie-Sophomore game during the NBA All-Star Weekend.  *Id.*, ¶ 4.  He is also a three-time NBA "All-Star" and an All-NBA player.  *Id.*, ¶ 5.  He is also responsible for founding the Gilbert Arenas "Zero Two Hero" Foundation, which promotes education, encourages foster case, and raises awareness for homelessness.  *Id.*, ¶ 6.  As part of his "Zero Two Hero" efforts, he offers videos depicting events in his life through www.gilbertarenas.com and www.zerotwohero.com.  *Id.*  The latter was an Official Honoree for Best Website in the Celebrity category for the "Webby Awards."  *Id.*

Plaintiff and Defendant Govan were previously in a romantic relationship, and the two have had four children together.  *Id.*, ¶ 7; *see also* Complaint ¶¶ 10-11. However, the relationship between the two has since ended.  *Id.*  After the relationship ended, Govan was approached by Shed Media to appear on a

1   television show titled "Basketball Wives: Los Angeles"; Govan will indeed appear
2   in that show.  *See* Complaint ¶ 12, Shed Media's Answer ¶ 12.

3           "Basketball Wives: Los Angeles" is a "spin-off" of the "Basketball Wives"
4   reality television show; "Basketball Wives" has spawned three seasons worth of
5   episodes that have been aired on the basic cable channel, VH1.  Declaration of
6   Yuo-Fong C. Amato ("Amato Decl."), Ex. A.  The "Basketball Wives" television
7   show franchise is one that attracts viewers by promising "catfights" and drama.
8   Amato Decl., Exs. A and B.  Common sense dictates that Shed Media considered
9   the popularity of the NBA, basketball, and basketball players in creating its
10  "Basketball Wives" television show franchise.  Similarly, common sense dictates
11  that Shed Media also considered only those women who have or have had intimate
12  relationships with popular or controversial players who generate the most interest.
13  Plaintiff is a player who generates a lot of viewer interest.

14          On or around June 20, 2011, VH1/Shed Media issued a press release, which
15  reads in relevant part:

16                  LOS ANGELES, CA – June 20, 2011 – VH1 is expanding their
17                  "Basketball Wives" franchise with an explosive new series set
18                  in Los Angeles featuring the wives and girlfriends of players
19                  both the Lakers and their cross-town rivals, the Clippers….
20                  "Basketball Wives" premieres on Monday, August 29 at 8pm
21                  ET/PT
22                  Elbow throwing, trash talking and in-your-face action:  forget
23                  the NBA, we're talking about their wives!  The successful VH1
24                  franchise "Basketball Wives" just tapped a new team of leading
25                  ladies to take Los Angeles by storm in "Basketball Wives LA"
26                  premiering Monday, August 29 at 8 PM ET/PT.  "Basketball
27                  Wives LA" introduces a group of dynamic women with
28                  relationships to some of the biggest basketball players in the

game.  "Basketball Wives LA" cast includes:  Kimsha Artest
(wife of Ron Artest, Los Angeles Lakers), Gloria Govan
(fiancée of Matt Barnes, Los Angeles Lakers), Laura Govan
(sister of Gloria Govan) and Jacke Christie (wife of Doug
Christie, former player for the Los Angeles Clippers) and Imani
Showalter (fiancée of Stephen Jackson, Charlotte Bobcats) as
well as others.  This 10 episode, hour-long series will dive into
the real-life locker room of these leading ladies, giving viewers
a never-before-seen look at what it takes to live in La La Land
and be connected to a famous professional athlete.  For the
most part, these women live the life with the best cars, biggest
mansions and hottest bling but living the high life is not all
glamour and often there is a price to pay.  Cameras will follow
these women as they attempt to juggle their relationships,
infidelity issues, children and friendships while trying to find
the perfect balance between supporting their families and
realizing their own career ambitions.  "Basketball Wives LA"
brings a full court press to VH1 Monday, August 29 at 8 PM
ET/PT.

*Id.*  Presumably because of pre-litigation communications between Plaintiff and
Shed Media, the press release does not mention Plaintiff's name in connection with
Govan.  *Id.*; see also Complaint ¶ 18; Shed Media's Answer ¶ 18 (admitting to pre-
litigation communications).  Of course, no mention of Plaintiff's name was
necessary, as the rest of the media world caught onto the connection.  On the same
day that the official press release was issued, several media outlets were quick to
point out the connection between Govan and Plaintiff, including but not limited to
www.realitytvworld.com, www.examiner.com, www.sheknows.com,
www.realitytea.com.  Amato Decl. Ex. C.  Govan herself also granted media

-4-

interviews, which resulted in the June 20, 2011 article in the Washington Post titled, "Laura Govan, Gilbert Arenas's ex, joins cast of 'Basketball Wives LA.'" Amato Decl. Ex. D.

## III.   ARGUMENT

### A.   Legal Standard for Issuing a Preliminary Injunction

A preliminary injunction is proper when plaintiffs establish "either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) the existence of serious questions going to the merits and that the balance of hardships tips sharply in [their] favor." *Abercrombie & Fitch Co. v. Moose Creek, Inc.,* 486 F.3d 629, 633 (9th Cir. 2007); *Goto.com, Inc. v. Walt Disney Co.,* 202 F.3d 1199, 1204-05 (9th Cir. 2000). "[T]hese are not two distinct tests, but rather the opposite ends of a single 'continuum in which the required showing of harm varies inversely with the required showing of meritoriousness.'" *Rodeo Collection Ltd. v. West Seventh,* 812 F.2d 1215, 1217 (9th Cir. 1987).

### B.   A Preliminary Injunction Should Issue Based on Common Law Misappropriation of Likeness

#### 1.   Plaintiff Will Likely Succeed on the Merits

A common law cause of action for appropriation of name or likeness requires a plaintiff to show the following: (1) the defendant's use of plaintiff's identity, (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise, (3) lack of consent, and (4) resulting injury. *Abdul-Jabbar v. General Motors Corp.*, 85 F.3d 407, 413-14 (9th Cir. 1995) (citations omitted). All elements exist here.

##### a)   Defendants Use Plaintiff's Identity

Under California common law, the "right of publicity is not limited to the appropriation of name or likeness…[t]he key issue is appropriation of the plaintiff's *identity*." *Id.* at 415. As shown in the cases below, "identity" is broadly construed, and the explicit use of a celebrity's name or face is not necessary.

-5-

1    In *Motschenbacher v. R. J. Reynolds Tobacco Co.*, 498 F.2d 821, 822 (9th

2   Cir. 1974), Lothar Motschenbacher, a professional driver of race cars, appealed

3   from the district court's order granting summary judgment in favor of defendants

4   for his common law misappropriation of likeness claim, among other claims.

5   Defendants had used a photograph containing Mr. Motschenbacher. *Id.*  Mr.

6   Motschenbacher's facial features were not visible, and the defendants had partially

7   altered the appearance of the driver's race car, including changing the number "11"

8   to "71," adding a spoiler to the car, adding the word "Winston," and removing

9   other advertisements and logos from the car. *Id.*  Nevertheless, the appellate court

10  found that Mr. Mostchenbacher's likeness could have been misappropriated:

11  "Having viewed a film of the commercial, we agree with the district court that the

12  'likeness' of plaintiff is itself unrecognizable; however, the court's further

13  conclusion of law to the effect that the driver is not identifiable as plaintiff is

14  erroneous in that it wholly fails to attribute proper significance to the distinctive

15  decorations appearing on the car.  As pointed out earlier, these markings were not

16  only peculiar to the plaintiff's cars but they caused some persons to think the car in

17  question was plaintiff's and to infer that the person driving the car was the

18  plaintiff." *Id.* at 827.

19   In *Carson v. Here's Johnny Portable Toilets, Inc.*, 698 F.2d 831, 837 (6th

20  Cir. 1983), where defendants sold "HERE'S JOHNNY" portable toilets, the

21  appellate court stated that "a celebrity's identity may be appropriated in various

22  ways.  It is our view that, under the existing authorities, a celebrity's legal right of

23  publicity is invaded whenever his identity is intentionally appropriated for

24  commercial purposes….  It is not fatal to appellant's claim that appellee did not

25  use his 'name.'  Indeed, there would have been no violation of [Johnny Carson's]

26  right of publicity even if appellee had used his name, such as 'J. William Carson

27  Portable Toilet' or the 'John William Carson Portable Toilet' or the 'J.W. Carson

28  Portable Toilet.'  The reason is that, though literally using appellant's 'name,' the

-6-

1    appellee would not have appropriated Carson's identity as a celebrity.  Here there

2    was an appropriation of Carson's identity without using his 'name.'"

3        In *White v. Samsung Electronics America, Inc.*, 971 F.2d 1395, 1396 (9th

4    Cir. 1992)., defendants ran an advertisement that "depicted a robot, dressed in a

5    wig, gown, and jewelry which [defendant] consciously selected to resemble

6    [Vanna] White's hair and dress.  The robot was posed next to a game board which

7    is instantly recognizable as the Wheel of Fortune game show set, in a stance for

8    which White is famous."  The appellate court reversed the district court's grant of

9    summary judgment as to the common law misappropriation of likeness claim,

10   stating that:  "Viewed separately, the individual aspects of the advertisement in the

11   present case say little.  Viewed together, they leave little doubt about the celebrity

12   the ad is meant to depict."  *Id.* at 1399.

13       Here, Defendants have appropriated Plaintiff's identity.  The show is titled,

14   "Basketball Wives: Los Angeles."  The official press release for the show informs

15   the public that the show will feature "the wives and girlfriends of players,"

16   introduce "a group of dynamic women with relationships to some of the biggest

17   basketball players in the game," "dive into the real-life locker room of these

18   leading ladies, giving viewers a never-before-seen look at what it takes to live in

19   La La Land and be connected to a famous professional athlete," and "follow these

20   women as they attempt to juggle their relationships [with the athletes]."  *See*

21   Amato Decl. Ex. A.  Govan is a named participant of the show.  *Id.*  While the

22   press release creatively avoids stating Plaintiff's name (presumably due to pre-

23   litigation communications, as the other athletes are named), it takes less than one

24   leap of the imagination to know that Defendants refer to Plaintiff as one of the

25   referenced athletes.  Indeed, within the same day of the official press release, other

26   media outlets caught on to the connection, and disseminated Plaintiff's name to

27   Defendants' benefit.  *See* Amato Decl. Exs. A, C, D.  "A rule which says that the

28   right of publicity can be infringed only through the use of nine different methods

1    of appropriating identity merely challenges the clever advertising strategist to

2    come up with the tenth." *White*, *supra*, 971 F.2d at 1398.  Defendants here have

3    come up with the tenth—though Defendants do not use Plaintiff's name, the very

4    title of the reality television show, coupled with Govan's involvement, uses

5    Plaintiff's identity.

6                 **b)      Defendants Misappropriate Plaintiff's Identity to Their**

7                          **Advantage**

8           Merely "attracting television viewers' attention" constitutes gaining an

9    advantage.  *Abdul-Jabbar*, *supra*, 85 F.3d at 415.  Here, the "Basketball Wives"

10   show is predicated on the connection to NBA players, and Defendants gain an

11   advantage by attracting potential viewers' attention with the use of Plaintiff's

12   identity.  As mentioned above, Defendants intentionally leverage the interest

13   associated with professional basketball and basketball players to generate more

14   viewership, ratings, and revenue—all by exploiting Plaintiff's identity.  Therefore,

15   Defendants trade on Plaintiff's identity to their advantage.

16                **c)      Plaintiff Did Not Consent to Defendants' Misappropriation**

17          While it is likely that the NBA players whose actual spouses and fiancées

18   consent to the use of their identities for the "Basketball Wives" show (perhaps in

19   order to aid them in becoming television personalities), Plaintiff has not consented

20   to Defendants' misappropriation of his identity.  Arenas Decl. ¶ 8.

21                **d)      Defendants' Misappropriation Results in Injury to Plaintiff**

22          "Television and other media create marketable celebrity identity value.

23   Considerable energy and ingenuity are expended by those who have achieved

24   celebrity value to exploit it for profit.  The law protects the celebrity's sole right to

25   exploit this value." *White*, *supra*, 971 F.2d at 1399.  "Generally, the greater the

26   fame or notoriety of the identity appropriated, the greater will be the extent of the

27   economic injury suffered." *Motschenbacher*, *supra*, 498 F.2d at 825 (citations

28   omitted).  Here, Plaintiff has been building his identity as an NBA player for

1    approximately one decade, and as a basketball player for even longer.  Arenas

2    Decl. ¶ 3.  Plaintiff has the sole right to exploit the value of his identity and

3    celebrity, the value of which is, like his fame, extremely high.  Defendants should

4    not be able to exploit this value without compensating Plaintiff.

5         In addition, the entertainment industry commonly compensates celebrities or

6    individuals for their "life story rights."  *See Marder v. Lopez*, 450 F.3d 445, 452

7    (9th Cir. 2006) (dispute involving a release clause that granted a movie studio to

8    use the plaintiff's "life story rights").  Defendants' use of Plaintiff's identity, as it

9    is marketed to create the impression that the "Basketball Wives" show will provide

10   an insider look into the private life of Plaintiff through Govan, not only deprives

11   Plaintiff compensation for his "life story rights," it diminishes the value of

12   Plaintiff's rights—it's basic economics:  too much supply diminishes demand.

13        Further, not only economic damages are at stake:  "it is quite possible that

14   the appropriation of the identity of a celebrity may induce humiliation,

15   embarrassment and mental distress."  *Motschenbacher*, *supra*, 498 F.2d at 825

16   (citations omitted); *see also Abdul-Jabbar*, *supra*, 85 F.3d at 416 ("Injury to a

17   plaintiff's right of publicity is not limited to present or future economic loss, but

18   'may induce humiliation, embarrassment, and mental distress.'") (citations

19   omitted).

20        The "Basketball Wives" franchise is one that prides itself on its coarse brand

21   of drama, "cat fights," and "infidelity issues"—just to name a few.  *See* Amato

22   Decl. Exs. A, B.  Defendants' use of Plaintiff's identity to associate Plaintiff with

23   such a disreputable show will lessen Plaintiff's reputation for something that is

24   otherwise completely unrelated to Plaintiff.

25        As shown above, Defendants' misappropriation of Plaintiff's identity results

26   in injury to Plaintiff, which will continue and/or occur unless and until enjoined.

27   ///

28   ///

e)    **Defendants' Misappropriation Is Not Protected by the First Amendment**

(1)    *Defendants' Use of Plaintiff's Identity Is Not Sufficiently Related to Plaintiff*

"If the name or likeness is used solely to attract attention to a work that is not related to the identified person, the user may be subject to liability for a use of the other's identity in advertising."  Restatement (Third) of Unfair Competition § 47 cmt. c (1995).  "The First Amendment defense…is not absolute…A tenuous connection between the unauthorized use of a person's name or likeness and the matter of public interest can remove the publication from the First Amendment's protection."  *Yeager v. Cingular Wireless LLC*, 673 F.Supp.2d 1089, 1096 (E.D.Cal. 2009); *see also Leverton v. Curtis Pub. Co.*, 192 F.2d 974 (3d Cir. 1951) (photograph of the plaintiff in a newsworthy event—a traffic accident—used with an article unrelated to the event was not a privileged use, and was subject to liability for invasion of privacy).

Here, even if the actual content of the television show were protected by the First Amendment, Defendants' use of Plaintiff's identity is not, because Plaintiff's identity is used solely to attract attention to the show, and Plaintiff is not at all related to the show.  Defendants seek to draw a wider viewership to the "Basketball Wives" reality television show by falsely promising an insider look into Plaintiff's familial life, and Defendants' gain comes at Plaintiff's loss, without compensation to Plaintiff or Plaintiff's consent.  "[T]he First Amendment does not absolve movie companies—or publishers—from the obligation of paying their help."  *Grant v. Esquire, Inc.*, 367 F.Supp. 876, 884 (S.D.N.Y. 1973).  Likewise, Defendants cannot trade on Plaintiff's identity for promoting their product without paying for it.

///

///

-10-

*(2)*   *Defendants' Use of Plaintiff's Identity Is Primarily Exploitative and Not Transformative*

"[D]epictions of celebrities amounting to little more than the appropriation of the celebrity's economic value are not protected expression under the First Amendment." *Comedy III Productions, Inc. v. Gary Saderup, Inc.*, 25 Cal.4th 387, 400 (2001). "We ask, in other words, whether a product containing a celebrity's likeness is so transformed that it has become primarily the defendant's own expression rather than the celebrity's likeness…when an artist's skill and talent is manifestly subordinated to the overall goal of…commercially exploit[ing] his or her fame, then the artists's right of free expression is outweighed by the right of publicity." *Id.* at 406.

Nothing about Defendants' use of Plaintiff's identity is transformative and worthy of First Amendment protection. Defendants do not use Plaintiff's identity in a transformative manner, e.g., "a form of ironic social comment[ary]"—even if the involvement of performers who are not wives of basketball players on a show titled "Basketball Wives" may constitute verbal irony, that is not Defendants' intention. *See id.* at 409 (explaining that Andy Warhol's paintings of celebrities constitute a form of ironic social commentary). Instead, Defendants' intention is to use Plaintiff's identity to exploit its value and generate additional interest in a television show (which results in higher viewership that in turn increases advertising revenue) that, absent the relationships to the athletes, would otherwise be nil. Therefore, Defendants' use of Plaintiff's identity is not protected by the First Amendment.

*(3)*   *Defendants' Use of Plaintiff's Identity Was Not Truthful; Defendants Acted with Actual Malice*

It is true that "Constitution protection extends to the truthful use of a public figure's name and likeness in advertising which is merely an adjunct of protected publication and promotes only the protected publication." *Page v. Something*

1   *Weird Video*, 960 F.Supp. 1438, 1444 (C.D.Cal. 1996) (citation omitted).  But

2   Defendants' use of Plaintiff's identity is not truthful.  Defendants' very marketing

3   campaign is premised on delivering a behind-the-scenes look into Plaintiff's life,

4   even if it is allegedly from Govan's perspective.  *See* Amato Decl. Ex. A.  Because

5   Defendants cannot actually deliver a look into Plaintiff's life, Defendants' use of

6   Plaintiff's identity is not truthful and not entitled to First Amendment protection.

7        But even if Defendants' speech is deemed non-commercial speech protected

8   by the First Amendment, which it should not, "a public figure" can nevertheless

9   "recover damages for non-commercial speech from a media organization" if that

10  plaintiff can show "actual malice"; i.e., that the defendants acted with "reckless

11  disregard for the truth" or a "high degree of awareness of probable falsity."

12  *Hoffman v. Capital Cities/ABC, Inc.*, 255 F.3d 1180, 1186 (9th Cir. 2001).  In

13  *Hoffman*, a magazine published an article titled "Grand Illusions," which featured

14  digitally-altered film stills where the actors appeared to be wearing the latest

15  fashions.  *Id.* at 1183.  One such altered film still replaced Dustin Hoffman's body

16  and red sequined dress from the movie "Tootsie" with a male model's body

17  wearing a cream-colored evening dress.  *Id.*  Mr. Hoffman then sued for various

18  claims, include common law misappropriation of likeness.  *Id.*  Though the court

19  found that the altered film stills were protected by the First Amendment, if Mr.

20  Hoffman had been able to show "actual malice," he could nevertheless recover

21  damages.  *Id.* at 1186.  Ultimately, however, Mr. Hoffman could not show that the

22  magazine "intended to create the false impression in the minds of its readers that

23  when they saw the altered 'Tootsie' photograph they were seeing Hoffman's

24  body."  *Id.* at 1187.

25       Here, however, Defendants absolutely intended for potential viewers to

26  believe that a show titled "Basketball Wives" and starring Govan is related to

27  Plaintiff's life.  Defendants took care to inform potential viewers that the show will

28  feature "the wives and girlfriends of players," introduce "a group of dynamic

-12-

women with relationships to some of the biggest basketball players in the game," "dive into the real-life locker room of these leading ladies, giving viewers a never-before-seen look at what it takes to live in La La Land and be connected to a famous professional athlete," and "follow these women as they attempt to juggle their relationships [with the athletes]."  *See* Amato Decl. Ex. A.  Defendants intentionally misappropriated Plaintiff's identity because they wanted to trade potential viewers' interest in Plaintiff into viewership and revenue for the "Basketball Wives: Los Angeles" television show.  Therefore, Defendants acted with actual malice, and even if their speech is protected by the First Amendment— which it is not—Plaintiff can nevertheless recover for misappropriation of likeness.

### f)      Defendants' Misappropriation Does Not Constitute "Incidental Use"

Generally, "incidental use of a plaintiff's name or likeness does not give rise to liability" under a common law misappropriation of likeness claim.  *Yeager*, *supra*, 673 F.Supp.2d at 1100.  "Whether the use of a plaintiff's name or likeness falls within the incidental use exception to liability 'is determined by the role that the use of the plaintiff's name or likeness plays in the main purpose and subject of the work at issue.'"  *Id.* (citing *Preston v. Martin Bregman Prods., Inc.*, 765 F.Supp. 116, 119 (S.D.N.Y. 1991)).  The factors that courts consider include: "(1) whether the use has a unique quality or value that would result in commercial profit to the defendant, (2) whether the use contributes something of significance, (3) the relationship between the reference to the plaintiff and the purpose and subject of the work, and (4) the duration, prominence or repetition of the likeness relative to the rest of the publication."  *Id.* (citing *Aligo v. Time-Life Books, Inc.*, 1994 U.S.Dist. LEXIS 21559, *6 (N.D.Cal. Dec. 19, 1994)).  The doctrine of incidental use is generally not applicable—and liability will lie—where a plaintiff's identity is appropriated for the purpose of "taking advantage of

-13-

1  [plaintiff's] reputation, prestige, or other value associated with him." *Id.* (citing
2  Restatement (Second) of Torts § 652C, cmt. d).

3       First, Plaintiff's identity as a basketball celebrity has a unique quality or
4  value that results in greater marketability of the "Basketball Wives" show.
5  Second, Defendants' use of Plaintiff's identity is significant, as use of basketball
6  players' identity is the draw of the show.  Third, the purpose of the use of
7  Plaintiff's identity is again to draw more viewers to the show and increase
8  advertising revenue.  Fourth, due to the title of the show, Plaintiff's identity is
9  misappropriated every time Govan is featured in the show, which will likely be
10 significant, as she is a named participant in the official press release.  As it is
11 exactly Plaintiff's reputation and prestige that Defendants wish to take advantage
12 of, Defendants cannot claim that their use of Plaintiff's identity is merely
13 "incidental."

14       **2.      Plaintiff Is Threatened With Irreparable Harm**

15       Irreparable harm exists where the plaintiff holds the sole right to exploit his
16 own identity, as monetary damages are difficult to ascertain.  For example, in *Ali v.*
17 *Playgirl, Inc.*, 447 F.Supp. 723, 729 (S.D.N.Y. 1978), the district court stated, "[a]s
18 has been noted, in the course of his public career plaintiff [Muhammad Ali] has
19 established a commercially valuable proprietary interest in his likeness and
20 reputation, analogous to the good will accumulated in the name of a successful
21 business entity.  To the extent that defendants are unlawfully appropriating this
22 valuable commodity for themselves, proof of damages or unjust enrichment may
23 be extremely difficult…In virtually identical circumstances it has been observed
24 that 'a celebrity's property interest in his name and likeness is unique, and
25 therefore there is no serious question as to the propriety of injunctive
26 relief'…Further, defendants appear not only to be usurping plaintiff's valuable
27 right of publicity for themselves but may well be inflicting damage upon this
28 marketable reputation…[D]ifficulty in determining monetary damages leaves

1  plaintiff without an adequate remedy at law and satisfactorily establishes
2  irreparable injury for purposes of preliminary equitable relief." *Id.*

3        Here, Plaintiff is deprived of his sole right to exploit his property interest in
4  his identity, Defendants' use of Plaintiff's identity has and will result in
5  reputational harm, and determining monetary damages would be difficult and not
6  sufficiently protect Plaintiff from Defendants' misappropriation.  Therefore,
7  irreparable harm exists.

8        **3.**     **The Balance of Hardships Weighs in Favor of Plaintiff**

9        As shown above, Plaintiff would suffer the loss as the sole proprietor of his
10  own identity and the loss of reputation.

11        Defendants, on the other hand, can claim little hardship.  As stated in Shed
12  Media's Answer, "Shed Media admits that Plaintiff's counsel contacted it
13  regarding Laura Govan's participation in the ["Basketball Wives: Los Angeles"]
14  Show and that it [nevertheless] continued production of the Show as planned."
15  Shed Media's Answer ¶ 18.  When interviewed, Govan also stated that she was not
16  worried about her appearance in the "Basketball Wives" show either as it related to
17  Plaintiff's rights.  *See* Amato Decl. Ex. D.  Therefore, Defendants had considered
18  the risk involved in using Plaintiff's identity, and any hardship that Defendants
19  may claim they would endure should an injunction issue would result from
20  Defendants' own knowing disregard or discount of such a risk.

21        Further, the requested preliminary injunction would not preclude Defendants
22  from airing a show under a title and marketing scheme that would not include the
23  words "Basketball Wives" or not otherwise use Plaintiff's identity.  It would not
24  preclude Shed Media from using the "Basketball Wives" title in its future shows if
25  it seeks permission and/or compensates those whose identity they have
26  appropriated.  It would not preclude Govan from participating in reality television
27  shows that do not use Plaintiff's identity.

28        Therefore, the balance of hardships weight in Plaintiff's favor.

### 4.      All the Factors Weigh in Plaintiff's Favor

Plaintiff is likely to succeed on the merits of its common law misappropriation of likeness claim; Plaintiff has suffered and will continue to suffer irreparable harm if Defendants are not enjoined; and the balance of hardships tips in favor of Plaintiff.  Therefore, a preliminary injunction should issue.

**C.    A Preliminary Injunction Should Issue Based on Trademark Infringement**

**1.      Plaintiff Will Likely Succeed on the Merits**

**a)      Defendants' Use of Plaintiff's Trademarks Is Confusingly Similar**

Trademark infringement exists where a plaintiff is the owner of a valid mark which is subsequently used by a defendant in a manner which is likely to cause confusion.  15 U.S.C. § 1125(a).  To determine whether likelihood of confusion exists in a celebrity case, Courts in this district examine the following factors:  "(1) the level of recognition that the plaintiff has among the segment of the society for whom the defendant's product is intended; (2) the relatedness of the fame or success of the plaintiff to defendant's product; (3) the similarity of the likeness used by the defendant to the actual plaintiff; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) defendant's intent on selecting the plaintiff; and (8) likelihood of expansion of the product lines." *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1008 (9th Cir. 2001).  "Although these are all factors that are appropriate for consideration…they are not necessarily of equal importance, nor do they necessarily apply to every case."  *Id.*

First, Plaintiff has a high level of recognition among the segment of the society for whom the "Basketball Wives" show is intended; the premise of the show is to attract those viewers who have an interest in the lives of NBA players through their spouses.

-16-

1   Second, Plaintiff's fame and success in his basketball career is also directly

2   related to the "Basketball Wives" show; again, the show expressly seeks to attract

3   those viewers who have an interest in the lives of NBA players through their

4   spouses.

5   Third, while Defendants so far have made no explicit mention of Plaintiff's

6   name, Defendants have clearly used Plaintiff's identity—there is no doubt that

7   when viewers attempt to determine why Govan is on a show titled "Basketball

8   Wives" that they deduce the connection to Plaintiff.

9   Fourth, evidence of actual confusion is not necessary. *American Int'l*

10  *Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 832 (9th Cir. 1991).

11  Fifth, Defendants have, at the very least, used the Internet as their marketing

12  channels; Plaintiff also uses the Internet as a marketing channel (e.g.,

13  www.zerotwohero.com).

14  Sixth, consumers purchasing inexpensive items are less likely to exercise a

15  great degree of care. *Brookfield Communs. v. W. Coast Entm't Corp.*, 174 F.3d

16  1036, 1060 (9th Cir. 1999). Here, since viewers of the "Basketball Wives" either

17  do not have to pay extra to watch the show on cable television or do not have to

18  pay extra to watch the show on VH1's website, viewers are less likely to exercise a

19  great degree of care.

20  Seventh, Defendants unquestionably intended to profit by using Plaintiff's

21  identity.

22  Eighth, the expansion of the product lines is not usually relevant in such

23  cases, but with the growing popularity of reality television shows, it is conceivable

24  that famous athletes would participate in the filming thereof, or at least consent to

25  the use of their identities (which some presumably have done in "Basketball

26  Wives," as the show does feature a few actual spouses or fiancées of current or

27  former basketball players). *See White*, *supra*, 971 F.2d at 1401 ("the eighth factor,

28  'likelihood of expansion of the product lines,' does not appear apposite to a

-17-

1  celebrity endorsement case such as this"); *Downing*, *supra*, 265 F.3d at 1008-09

2  ("neither party discusses this [eighth] factor").

3        For these reasons, Defendants' use of Plaintiff's trademarks and celebrity

4  identity are likely to cause confusion and constitute trademark infringement.

5        **b)**     **Defendants' Use of Plaintiff's Trademarks Does Not**

6        **Constitute Nominative Fair Use**

7        Generally, a plaintiff cannot prevent a defendant from making a nominative

8  fair use of plaintiff's marks.  As an affirmative defense, a defendant must prove the

9  following to show that its use constitutes nominative fair use:  (1) defendant uses

10  the mark in connection with goods or services that are not readily identifiable

11  without use of the mark, (2) defendant uses only so much of the mark as is

12  reasonably necessary to identify the goods or services in question, and (2)

13  defendant takes no actions that would suggest sponsorship or endorsement by

14  plaintiff.  15 U.S.C. § 1115(b)(4); *New Kids on the Block v. New America*

15  *Publishing, Inc.*, 971 F.2d 302, 308 (9th Cir. 1992).

16        Here, any attempt by Defendants to assert the nominative fair use defense

17  will fail, because Defendants take actions that would suggest sponsorship or

18  endorsement by Plaintiff.  Defendants advertise the involvement of Govan, and the

19  official press release for the show informs the public that the show will feature "the

20  wives and girlfriends of players," introduce "a group of dynamic women with

21  relationships to some of the biggest basketball players in the game," "dive into the

22  real-life locker room of these leading ladies, giving viewers a never-before-seen

23  look at what it takes to live in La La Land and be connected to a famous

24  professional athlete," and "follow these women as they attempt to juggle their

25  relationships [with the athletes]."  *See* Amato Decl. Ex. A.  Defendants suggest that

26  viewers of the show will be provided a glimpse of Plaintiff's life with Plaintiff's

27  consent.

28  ///

-18-

1    For the above reasons, Defendants will not be able to show that they can
2    assert the nominative fair use defense.

3    **2.    Plaintiff Is Threatened With Irreparable Harm**

4    As discussed in Section III.B.2, *supra*, Plaintiff will suffer irreparable harm
5    unless and until enjoined by this Court.

6    **3.    The Balance of Hardships Weighs in Favor of Plaintiff**

7    As discussed in Section III.B.3, *supra*, the balance of hardships weighs in
8    favor of Plaintiff.

9    **4.    All the Factors Weigh in Plaintiff's Favor**

10   As discussed above, all the factors weight in Plaintiff's favor; therefore, a
11   preliminary injunction should issue based on trademark infringement.

12   **D.    A Bond Should Not Be Required or Should Be Minimal**

13   Federal Rules of Civil Procedure, "Rule 65(c) invests the district court 'with
14   discretion as to the amount of security required, if any.'  The district court may
15   dispense with the filing of a bond when it concludes there is no realistic likelihood
16   of harm to the defendant from enjoining his or her conduct."  *Jorgensen v.*
17   *Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).  Here, there is no realistic likelihood
18   that Defendants will be harmed from the issuance of a preliminary injunction, since
19   Defendants knowingly decided to appropriate Plaintiff's identity and infringe on
20   Plaintiff's trademarks and risk such an injunction, and since Plaintiff has made a
21   strong showing that it will prevail on the merits.  Should the Court wish to
22   nevertheless issue a bond, Plaintiff respectfully requests that the bond not exceed a
23   minimal amount.

24   ///
25   ///
26   ///
27
28

-19-

1

## IV.   CONCLUSION

2          For the above enumerated reasons, Plaintiff respectfully requests that this

3   Court grant its motion for a preliminary injunction against Defendant, to prevent

4   continuing misappropriation, infringement, and irreparable harm during the

5   pendency of this lawsuit.

6

7   Dated:  July 25, 2011                               Respectfully submitted,
                                                        GORDON & REES LLP
8
9                                            by      s/Richard P. Sybert/
                                                    C. Anthony Mulrain
10                                                   Richard P. Sybert
                                                     Yuo-Fong C. Amato
11                                                   Attorneys for Plaintiff
                                                     GILBERT J. ARENAS
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28