C. Anthony Mulrain, *pro hac vice*
email amulrain@gordonrees.com
GORDON & REES LLP
The Pinnacle Building, 5th Floor
Atlanta, Georgia 30326
tel (404) 869-9054 / fax (678) 389-8475

Richard P. Sybert, Bar No. 80731
email rsybert@gordonrees.com
Yuo-Fong C. Amato, Bar No. 261453
email bamato@gordonrees.com
GORDON & REES LLP
633 W. Fifth Street, 52nd Floor
Los Angeles, California 90071
tel (213) 576-5000/ fax (213) 680-4470

Attorneys for Plaintiff
GILBERT J. ARENAS, JR.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GILBERT J. ARENAS, JR., an individual,<br><br>                          Plaintiff,<br><br>        vs.<br><br>SHED MEDIA US INC., a Delaware corporation; LAURA GOVAN, an individual; and DOES 1 through 10, inclusive,<br><br>                          Defendants. | CASE NO.  11-cv-5279 DMG - PJW<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT SHED MEDIA US INC.'S SPECIAL MOTION TO STRIKE RIGHT OF PUBLICITY CLAIMS PURSUANT TO CAL. CODE CIV. PROC. § 425.16**<br><br>Date:        August 29, 2011<br>Time:        10:00 a.m.<br>Dept.:        7<br>Hon. Dolly M. Gee |

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................1

II.   FACTS ...............................................................................................2

III.  ARGUMENT .......................................................................................5

      A.    Legal Standard for Special Motions to Strike ....................................5

      B.    The Right of Publicity Claims Should Not Be Stricken ......................6

            1.    Defendant's Actions Are Not Protected ....................................6

                  a)    Defendant's Use of Plaintiff's Identity Is
                        Not Sufficiently Related to Plaintiff and Not
                        "in Connection with a Public Issue" ................................6

                  b)    Defendant's Use of Plaintiff's Identity Is
                        Primarily Exploitative and Not Transformative
                        or Expressive .................................................................8

                  c)    Defendant's Use of Plaintiff's Identity Was
                        Not Truth; Defendant Acted with Actual Malice ............9

                  d)    Defendant's Misappropriation Does Not
                        Constitute "Incidental Use" .........................................11

            2.    Plaintiff's Right of Publicity Claims Have a
                  Reasonable Probability of Prevailing on the Merits .................12

                  a)    The Common Law Misappropriation of Likeness
                        Claim Will Reasonably Prevail on the Merits ...............13

                        (1)    Defendant Uses Plaintiff's Identity ....................13

                        (2)    Defendant Misappropriates Plaintiff's
                               Identity to Its Advantage ...................................16

                        (3)    Plaintiff Did Not Consent to Defendant's
                               Misappropriation................................................16

                        (4)    Defendant's Misappropriation Results in
                               Injury to Plaintiff ..............................................16

**TABLE OF CONTENTS (cont'd)**

b)   The Statutory Misappropriation of Likeness Claim Will Reasonably Prevail on the Merits ..............18

C.   Should the Special Motion to Strike Be Granted, Leave to Amend Should Also Be Granted ......................................................19

IV.   **CONCLUSION** .......................................................................................20

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*Abdul-Jabbar v. General Motors Corp.*,

4
    85 F.3d 407 (9th Cir. 1995)........................................................13, 16, 17

5

*Aligo v. Time-Life Books, Inc.*,

6
    1994 U.S.Dist. LEXIS 21559 (N.D.Cal. Dec. 19, 1994) ..........................12

7

*Aronson v. Dog Eat Dog Films, Inc.*,

8
    738 F.Supp.2d 1104 (W.D.Wash. 2010) ......................................................7

9

*Baugh v. CBS, Inc.*,

10
    828 F.Supp. 745 (N.D.Cal. 1993)................................................................7

11

*Carson v. Here's Johnny Portable Toilets, Inc.*,
    698 F.2d 831 (6th Cir. 1983) ...................................................................14

12

13

*Cher v. Forum International, Ltd.*,
    692 F.2d 634 (9th Cir. 1982)................................................................8, 11

14

15

*Comedy III Productions, Inc. v. Gary Saderup, Inc.*,
    25 Cal.4th 387 (Cal. 2001) ...................................................................8-9

16

17

*Daly v. Viacom, Inc.*,
    238 F.Supp.2d 1118 (N.D.Cal. 2002)..........................................................7

18

19

*Gionfriddo v. Major League Baseball*,
    94 Cal.App.4th 400 (Cal.Ct.App. 2001)......................................................7

20

21

*Grant v. Esquire, Inc.*,
    367 F.Supp. 876 (S.D.N.Y. 1973) ..............................................................7

22

*Guglielmi v. Spelling-Goldberg Productions*,
    25 Cal.3d 860 (Cal. 1979)......................................................................7-8

23

24

*Hicks v. Casablanca Records*,
    464 F.Supp. 426 (S.D.N.Y. 1978) ..............................................................7

25

26

*Hilton v. Hallmark*,
    580 F.3d 874 (9th Cir. 2009),
    *amended*, 599 F.3d 894 (9th Cir. 2010)...............................................5, 12

27

28

Opposition to Defendant Shed Media's Special Motion to Strike

1

**TABLE OF AUTHORITIES (cont'd)**

2

**Cases (cont'd)**

3
4
*Hoffman v. Capital Cities/ABC, Inc.*,
    255 F.3d 1180 (9th Cir. 2001)........................................................8, 9-10

5
6
*Leverton v. Curtis Pub. Co.*,
    192 F.2d 974 (3d Cir. 1951).........................................................6

7
8
*Marder v. Lopez*,
    450 F.3d 445 (9th Cir. 2006)........................................................17

9
10
*Metabolife Int'l v. Wornick*,
    264 F.3d 832 (9th Cir. 2001).......................................................13

11
*Midler v. Ford Motor Co.*,
    849 F.2d 460 (9th Cir. 1988).......................................................18

12
13
*Montana v. San Jose Mercury News, Inc.*,
    34 Cal.App.4th 790 (Cal.Ct.App. 1995).........................................8

14
15
*Motschenbacher v. R.J. Reynolds Tobacco Co.*,
    498 F.2d 821 (9th Cir. 1974)....................................13-14, 16, 17

16
17
*O'Neil & Co., Inc. v. Validea.com, Inc.*,
    202 F.Supp.2d 1113 (C.D.Cal. 2002)........................................10-11

18
19
*Page v. Something Weird Video*,
    960 F.Supp. 1438 (C.D.Cal. 1996) ............................................9

20
21
*Preston v. Martin Bregman Prods., Inc.*,
    765 F.Supp. 116 (S.D.N.Y. 1991) ...........................................11

22
*Schering Corp. v. First DataBank, Inc.*,
    2007 U.S.Dist. LEXIS 50164 (N.D.Cal. Apr. 20, 2007)...........................13

23
24
*Slivinsky v. Watkins-Johnson Co.*,
    221 Cal.App.3d 799 (Cal.Ct.App. 1990)......................................18

25
26
*Verizon Delaware, Inc. v. Covad Communications Co.*,
    377 F.3d 1081 (9th Cir. 2004).....................................................19

27
28
*Wendt v. Host International, Inc.*,
    125 F.3d 806 (9th Cir. 1997).......................................................18

# TABLE OF AUTHORITIES (cont'd)

**Cases (cont'd)**

*White v. Samsung Electronics America, Inc.*,
     971 F.2d 1395 (9th Cir. 1992)..................................................14-15, 16, 18

*Yeager v. Cingular Wireless LLC*,
     673 F.Supp.2d 1089 (E.D.Cal. 2009) .................................................6, 11-12

**Constitution**

U.S. CONST. amend. I...................................................................................1, 6-10

**Statutes**

Cal. Civ. Code § 3344 ...................................................................................18, 19

Cal. Code Civ. Proc. § 425.16.......................................................................... 5, 6-7

**Secondary**

Restatement (Second) of Torts § 652C, cmt. d.......................................................12

Restatement (Third) of Unfair Competition § 47 cmt. c .........................................6

Opposition to Defendant Shed Media's Special Motion to Strike

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Defendant Shed Media US Inc. ("Defendant" or "Shed") produces various "reality" television shows, two of which are "Basketball Wives" and "Basketball Wives: Los Angeles."  These shows cash in on the popularity of the various "Real Housewives" reality television shows and the popularity of professional basketball and basketball players such as Plaintiff Gilbert J. Arenas, Jr.'s ("Plaintiff" or "Arenas").  Shed has deliberately leveraged the interest associated with professional basketball and basketball players to generate more viewership, ratings, and revenue—all by exploiting Plaintiff's identity without compensation.

Shed's misreading of the First Amendment would devalue and extend its protections to conversion and misappropriation—theft.  While the law has recognized free speech in association with matters of public interest, no protection exists to allow a media company to expropriate and use a public figure's identity to promote its own product (otherwise expressive or not), when, as here, the product bears a minimal relationship to the public figure.  Provided that other privacy and defamation laws are not violated, Shed could publish an unauthorized biography of Mr. Arenas or produce a movie constituting a fictionalized account of Mr. Arenas's life.  But what Shed has done here is use Mr. Arenas's identity and/or name and likeness to promote a "reality" television show that Shed admits is not at all related to Mr. Arenas and that would otherwise likely fail to generate any "public interest" absent the misappropriation of likeness of professional basketball players such as Mr. Arenas.  The First Amendment is not so broad as to allow theft and false advertising.

Because Defendant cannot meet its burden to show that its use of Plaintiff's identity and/or likeness is protected, Plaintiff respectfully requests that this Court deny Defendant's anti-SLAPP motion.

///

-1-

## II.   FACTS

Plaintiff is a professional athlete who plays basketball for the National Basketball Association ("NBA") team, Orlando Magic.  Plaintiff is one of the most well-known players in the NBA.  Complaint ¶ 9.  He is known as GILBERT J. ARENAS, JR., GILBERT ARENAS, and GIL ARENAS, and by his nicknames, "AGENT ZERO," "AGENT ARENAS," and "HIBACHI"—all of which serve as his trademarks.  Declaration of Gilbert J. Arenas, Jr. in Support of Plaintiff's Motion for Preliminary Injunction ("Arenas Decl.") ¶ 2, Docket No. 18-2.

Plaintiff has played professional basketball in the NBA since 2001.  *Id.*, ¶ 3. In 2003, he received the "NBA Most Improved Player Award" and was named "Most Valuable Player" of the Rookie-Sophomore game during the NBA All-Star Weekend.  *Id.*, ¶ 4.  He is also a three-time NBA "All-Star" and an All-NBA player.  *Id.*, ¶ 5.  He is also responsible for founding the Gilbert Arenas "Zero Two Hero" Foundation, which promotes education, encourages foster case, and raises awareness for homelessness.  *Id.*, ¶ 6.  As part of his "Zero Two Hero" efforts, he offers videos depicting events in his life through www.gilbertarenas.com and www.zerotwohero.com.  *Id.*  The latter was an Official Honoree for Best Website in the Celebrity category for the "Webby Awards."  *Id.*

Plaintiff and Defendant Govan were previously in a romantic relationship, and have had four children together.  *Id.*, ¶ 7; *see also* Complaint ¶¶ 10-11. However, the relationship between the two has since ended.  *Id.*  Thereafter, Ms. Govan was approached by Shed to appear on a television show entitled "Basketball Wives: Los Angeles," and Govan will indeed appear in that show.  *See* Complaint ¶ 12, Shed Media's Answer ¶ 12.

"Basketball Wives: Los Angeles" is a spin-off of the "Basketball Wives" reality television show, which has spawned three seasons worth of episodes aired on the VH1 cable channel.  Declaration of Yuo-Fong C. Amato ("Amato Decl."), Ex. A.  The "Basketball Wives" television show franchise is one that attracts

-2-

1  viewers by promising "catfights" and drama.  Amato Decl., Exs. A and B.
2  Common sense dictates that Shed Media considered the popularity of the NBA,
3  basketball, and basketball players in creating its "Basketball Wives" television
4  show franchise.  Similarly, common sense dictates that Shed Media also
5  considered only those women who have or have had intimate relationships with
6  popular or controversial players who generate the most interest.  Otherwise, why
7  have them on?  Plaintiff is a player who generates a lot of viewer interest.
8      On or around June 20, 2011, VH1/Shed issued a press release, which reads
9  in relevant part:

10          LOS ANGELES, CA – June 20, 2011 – VH1 is expanding their
11          "Basketball Wives" franchise with an explosive new series set
12          in Los Angeles featuring the wives and girlfriends of players
13          both the Lakers and their cross-town rivals, the Clippers….
14          "Basketball Wives" premieres on Monday, August 29 at 8pm
15          ET/PT.  Elbow throwing, trash talking and in-your-face action:
16          **forget the NBA, we're talking about their wives!**  The
17          successful VH1 franchise "Basketball Wives" just tapped a new
18          team of leading ladies to take Los Angeles by storm in
19          "Basketball Wives LA" premiering Monday, August 29 at 8
20          PM ET/PT.  **"Basketball Wives LA" introduces a group of**
21          **dynamic women with relationships to some of the biggest**
22          **basketball players in the game.**  "Basketball Wives LA" cast
23          includes:  Kimsha Artest (wife of Ron Artest, Los Angeles
24          Lakers), Gloria Govan (fiancée of Matt Barnes, Los Angeles
25          Lakers), **Laura Govan** (sister of Gloria Govan) and Jacke
26          Christie (wife of Doug Christie, former player for the Los
27          Angeles Clippers) and Imani Showalter (fiancée of Stephen
28          Jackson, Charlotte Bobcats) as well as others.  This 10 episode,

-3-

1    hour-long series will dive into the real-life locker room of these

2    leading ladies, **giving viewers a never-before-seen look at**

3    **what it takes to live in La La Land and be connected to a**

4    **famous professional athlete**.  For the most part, these women

5    live the life with the best cars, biggest mansions and hottest

6    bling but living the high life is not all glamour and often there is

7    a price to pay.  **Cameras will follow these women as they**

8    **attempt to juggle their relationships, infidelity issues,**

9    **children and friendships while trying to find the perfect**

10   **balance between supporting their families and realizing**

11   **their own career ambitions.**  "Basketball Wives LA" brings a

12   full court press to VH1 Monday, August 29 at 8 PM ET/PT.

13   *Id.* (emphasis added).

14       Presumably because of pre-litigation communications between Plaintiff and

15   Defendant, the press release does not mention Plaintiff's name in connection with

16   Govan.  *Id.*; see also Complaint ¶ 18; Shed's Answer ¶ 18 (admitting to pre-

17   litigation communications).  Of course, no mention of Plaintiff's name was

18   necessary, as the rest of the media world caught onto the connection.  On the same

19   day that the official press release was issued, several media outlets were quick to

20   point out the connection between Govan and Plaintiff, including but not limited to

21   www.realitytvworld.com, www.examiner.com, www.sheknows.com,

22   www.realitytea.com.  Amato Decl. Ex. C.  Govan herself also granted media

23   interviews, which resulted in the June 20, 2011 article in the Washington Post

24   titled, "Laura Govan, Gilbert Arenas's ex, joins cast of 'Basketball Wives LA.'"

25   Amato Decl. Ex. D.  However, Defendant has admitted that it may use Plaintiff's

26   name in the future in association with the promotion or advertising of the

27   "Basketball Wives: Los Angeles" show.  Declaration of Scott Acord ("Acord

28   Decl.") ¶ 4, 6:22-25, Docket No. 19-2.

-4-

1   Despite the attempt to garner additional media attention by associating the

2   "Basketball Wives: Los Angeles" show with Plaintiff, Defendant has admitted in

3   its pleadings herein that the show has no actual relationship to Plaintiff:

4   • "The series is not about basketball, let alone basketball players."

5      Defendant's Brief in Support of Special Motion to Strike

6      ("Defendant's Brief") 1:5-6, Docket No. 19.

7   • "Plaintiff has not appeared in the Show." *Id.* at 3:16.

8   • "[T]he Show is in no way about basketball or basketball players.  It is

9      about the women's relationships with one another and their lives." *Id.*

10     at 4:6-8.

11  Yet Shed is attempting to capitalize on Mr. Arenas' fame and celebrity to promote

12  the show.

13                     **III.          ARGUMENT**

14  **A.   Legal Standard for Special Motions to Strike**

15   California Code of Civil Procedure § 425.16(b)(1) states:

16      A cause of action against a person arising from any act of that person
        in furtherance of the person's right of petition or free speech under the
17      United States Constitution or the California Constitution in connection
        with a public issue shall be subject to a special motion to strike, unless
18      the court determines that the plaintiff has established that there is a
        probability that the plaintiff will prevail on the claim.[1]
19

20  A special motion to strike, or an "anti-SLAPP" motion, brought pursuant to Cal.

21  Code of Civ. Proc. § 425.16 may only be brought as to state claims.  *Hilton v.*

22  *Hallmark*, 580 F.3d 874 (9th Cir. 2009), amended 599 F.3d 894, 901 (9th Cir.

23  2010).  The defendant movant has the burden to show that the state claims arise

24  from the defendant's protected activities; only if defendant is able to do so does the

25  plaintiff need to show a probability of success on the merits.  *Id.* at 901-02.

26  ///

27  ─────────────────────
    [1] It goes without saying that the anti-SLAPP statute was intended to protect free
28  and open public discussion of public issues—not to shield crass commercial
    entertainment and exploitation.

-5-

**B.      The Right of Publicity Claims Should Not Be Stricken**

      **1.      Defendant's Actions Are Not Protected**

           **a)      Defendant's Use of Plaintiff's Identity Is Not Sufficiently
Related to Plaintiff and Not "in Connection with a Public
Issue"**

"If the name or likeness is used solely to attract attention to a work **that is
not related to the identified person**, the user may be subject to liability for a use
of the other's identity."  Restatement (Third) of Unfair Competition § 47 cmt. c
(1995) (emphasis added).  "The First Amendment defense…is not absolute…**A
tenuous connection between the unauthorized use of a person's name or
likeness and the matter of public interest can remove the publication from the
First Amendment's protection**."  *Yeager v. Cingular Wireless LLC*, 673
F.Supp.2d 1089, 1096 (E.D.Cal. 2009) (emphasis added); *see also Leverton v.
Curtis Pub. Co.*, 192 F.2d 974 (3d Cir. 1951) (photograph of the plaintiff in a
newsworthy event—a traffic accident—used with an article unrelated to the event
was not a privileged use, and was subject to liability for invasion of privacy).

Here, even if the actual content of the television show were protected by the
First Amendment, **Defendant's use of Plaintiff's identity is not**, because
Plaintiff's identity is used solely to attract attention to the show, and Plaintiff is not
at all related to the show.[2]  Defendant admits the complete lack of relationship
between the actual show and Plaintiff:  "the [Basketball Wives: Los Angeles]
Show is in no way about basketball or basketball players.  It is about the women's
relationships with one another and their lives."  Defendant's Brief 4:6-8, Docket
No. 19.  Thus, not only does Defendant's use of Plaintiff's identity fall outside the
protection of the First Amendment, Defendant cannot show that its speech is "in
connection with a public issue" as required by Cal. Code of Civ. Proc.

---

[2] *See* Section III.B.2 *infra* for discussion regarding the misappropriation of
Plaintiff's identity and likeness.

1   § 425.16(b)(1).  That Plaintiff's love life or former love life may be a "public
2   issue" is inapposite because the "Basketball Wives" show has no connection to
3   Plaintiff and cannot depict Plaintiff's nonexistent love life with Govan.

4          Instead, what Defendant seeks to do is to draw a wider viewership to the
5   "Basketball Wives" reality television show by falsely promising an insider look
6   into Plaintiff's familial life, and Defendant's gain comes at Plaintiff's loss, without
7   compensation to Plaintiff or Plaintiff's consent.  "[T]he First Amendment does not
8   absolve movie companies—or publishers—from the obligation of paying their
9   help."  *Grant v. Esquire, Inc.*, 367 F.Supp. 876, 884 (S.D.N.Y. 1973).  Likewise,
10  Defendant cannot trade on Plaintiff's identity for promoting its product without
11  paying for it.  Govan may be free to participate in a reality show about her life;
12  however, it is fundamentally unfair for Defendant to use Plaintiff's identity without
13  consent to promote such a show.

14         The cases cited by Defendant are highly factually distinguishable, as each
15  and every case involved a plaintiff's direct relationship to the work.  In *Daly v.*
16  *Viacom, Inc.*, 238 F.Supp.2d 1118, 1123 (N.D.Cal. 2002), the plaintiff actually
17  appeared in the "Bands on the Run" television show.  In *Baugh v. CBS, Inc.*, 828
18  F.Supp. 745, 752 (N.D.Cal. 1993), the plaintiff actually appeared in the "Street
19  Stories" television show.  In *Aronson v. Dog Eat Dog Films, Inc.*, 738 F.Supp.2d
20  1104, 1108 (W.D.Wash. 2010), the plaintiff's video and song were used in Michael
21  Moore's *Sicko* film.  In *Gionfriddo v. Major League Baseball*, 94 Cal.App.4th 400,
22  405-06 (Cal.Ct.App. 2001), plaintiffs baseball players' photographs and footage of
23  game play were used in various television shows such as "This Week in Baseball,"
24  "Pennant Chase," and "Major League Baseball Magazine."  In *Hicks v.*
25  *Casablanca Records*, 464 F.Supp. 426, 429 (S.D.N.Y. 1978), the heir to Agatha
26  Christie's publicity rights sued the producers of a film that constituted a
27  fictionalized account of Christie's life.  In *Guglielmi v. Spelling-Goldberg*
28  *Productions*, 25 Cal.3d 860, 862 (Cal. 1979), an alleged heir to silent motion

1   picture actor Rudolph Valentino sued the producers of a film that constituted a
2   fictionalized account of Valentino's life.  In *Hoffman v. Capital Cities/ABC, Inc.*,
3   255 F.3d 1180, 1183 (9th Cir. 2001), an image of the actor Dustin Hoffman was
4   used in a magazine article titled "Grand Illusions," which featured digitally-altered
5   film stills where the actors appeared to be wearing the latest fashions.  In *Cher v.
6   Forum International, Ltd.*, 692 F.2d 634, 636 (9th Cir. 1982), a magazine
7   published parts of a tape interview with the well-known singer and performer Cher.
8   In *Montana v. San Jose Mercury News, Inc.*, 34 Cal.App.4th 790, 792 (Cal.Ct.App.
9   1995), football player Joe Montana sued a newspaper for selling posters of
10  reproduced newspaper pages containing an artist's rendition of Montana.  Here,
11  however, Defendant admits, "Basketball Wives: Los Angeles" is not actually
12  related to Plaintiff.  Therefore, Defendant cannot claim First Amendment
13  protection as it relates to misappropriation of Plaintiff's identity.

       **b)      Defendant's Use of Plaintiff's Identity Is Primarily**
                        **Exploitative and Not Transformative or Expressive**

16      "[D]epictions of celebrities amounting to little more than the appropriation
17  of the celebrity's economic value are not protected expression under the First
18  Amendment."  *Comedy III Productions, Inc. v. Gary Saderup, Inc.*, 25 Cal.4th 387,
19  400 (Cal. 2001).  "We ask, in other words, whether a product containing a
20  celebrity's likeness is so transformed that it has become primarily the defendant's
21  own expression rather than the celebrity's likeness…when an artist's skill and
22  talent is manifestly subordinated to the overall goal of…commercially exploit[ing]
23  his or her fame, then the artists's right of free expression is outweighed by the right
24  of publicity."  *Id.* at 406.

25      Nothing about Defendant's use of Plaintiff's identity is transformative and
26  worthy of First Amendment protection.  Defendant does not use Plaintiff's identity
27  in a transformative manner, e.g., "a form of ironic social comment[ary]"—even if
28  the involvement of performers who are not wives of basketball players on a show

titled "Basketball Wives" may constitute verbal irony, that is not Defendant's intention. *See id.* at 409 (explaining that Andy Warhol's paintings of celebrities constitute a form of ironic social commentary). Instead, Defendant's intention is to use Plaintiff's identity to exploit its value and generate additional interest in a television show (which results in higher viewership that in turn increases advertising revenue) that, absent the relationships to the athletes, would otherwise be nil. Therefore, Defendant's use of Plaintiff's identity is not protected by the First Amendment.

### c) Defendant's Use of Plaintiff's Identity Was Not Truthful; Defendants Acted with Actual Malice

It is true that "Constitution protection extends to the truthful use of a public figure's name and likeness in advertising which is merely an adjunct of protected publication and promotes only the protected publication." *Page v. Something Weird Video*, 960 F.Supp. 1438, 1444 (C.D.Cal. 1996) (citation omitted). But Defendants' use of Plaintiff's identity is not truthful. Defendant's very marketing campaign is premised on delivering a behind-the-scenes look into Plaintiff's life or Plaintiff's allegedly "tumultuous relationship" with Govan. *See* Amato Decl. Ex. A; Defendant's Brief 25:2. Because Defendant cannot actually deliver a look into Plaintiff's life or a nonexistent relationship, Defendant's use of Plaintiff's identity is not truthful and not entitled to First Amendment protection.

But even if Defendants' speech is deemed non-commercial speech protected by the First Amendment, which it should not, "a public figure" can nevertheless "recover damages for non-commercial speech from a media organization" if that plaintiff can show "actual malice"; i.e., that the defendants acted with "reckless disregard for the truth" or a "high degree of awareness of probable falsity." *Hoffman*, *supra*, 255 F.3d at 1186. In *Hoffman*, a magazine published an article titled "Grand Illusions," which featured digitally-altered film stills where the actors appeared to be wearing the latest fashions. *Id.* at 1183. One such altered film still

-9-

1   replaced Dustin Hoffman's body and red sequined dress from the movie "Tootsie"

2   with a male model's body wearing a cream-colored evening dress.  *Id.*  Mr.

3   Hoffman then sued for various claims, include common law misappropriation of

4   likeness.  *Id.*  Though the court found that the altered film stills were protected by

5   the First Amendment, if Mr. Hoffman had been able to show "actual malice," he

6   could nevertheless recover damages.  *Id.* at 1186.  Ultimately, however, Mr.

7   Hoffman could not show that the magazine "intended to create the false impression

8   in the minds of its readers that when they saw the altered 'Tootsie' photograph

9   they were seeing Hoffman's body."  *Id.* at 1187.

10      Here, however, Defendant absolutely intended for potential viewers to

11   believe that a show titled "Basketball Wives" and starring Govan is related to

12   Plaintiff's life.  Defendant took care to inform potential viewers that the show will

13   feature "the wives and girlfriends of players," introduce "a group of dynamic

14   women with relationships to some of the biggest basketball players in the game,"

15   "dive into the real-life locker room of these leading ladies, giving viewers a never-

16   before-seen look at what it takes to live in La La Land and be connected to a

17   famous professional athlete," and "follow these women as they attempt to juggle

18   their relationships [with the athletes]."  *See* Amato Decl. Ex. A.  Defendant

19   intentionally misappropriated Plaintiff's identity because they wanted to trade

20   potential viewers' interest in Plaintiff into viewership and revenue for the

21   "Basketball Wives: Los Angeles" television show.  Therefore, Defendants acted

22   with actual malice, and even if their speech is protected by the First Amendment—

23   which it is not—Plaintiff can nevertheless recover for misappropriation of likeness.

24      Defendant attempts to claim that actual malice must involve knowing or

25   reckless claims of false endorsement, citing *O'Neil & Co., Inc. v. Validea.com,*

26   *Inc.*, 202 F.Supp.2d 1113, 1120 (C.D.Cal. 2002).  Yet, false endorsement is not the

27   required effect.  Specifically, this Court stated, "Plaintiffs must allege that

28   Dearborn published the book with knowledge that it contains false statements of

-10-

1   fact, or with reckless disregard for the truth…**Alternatively**, under *Cher*,

2   Plaintiffs' complaint may be sustained if it alleges that in its advertising Dearborn

3   knowingly or recklessly falsely claimed that O'Neil endorses The Market Gurus.."

4   *Id.* (citation omitted) (emphasis added).  Defendant's knowledge and recklessness

5   here stems from false statements or fact and/or reckless disregard for the truth; i.e.,

6   promoting a glimpse of Plaintiff's life when Defendant knew that the "Basketball

7   Wives: Los Angeles" show had nothing at all to do with Plaintiff's life.

8        Defendant's suggestion that "no reasonable person could believe that

9   Plaintiff endorses the Show is especially true in light of Plaintiff's publicly

10   tumultuous relationship with Govan" is inapposite, given that the falsity required

11   does not have to be premised on false endorsement.  But Defendant's mention of

12   the "publicly tumultuous relationship" is absolutely relevant—for a show that

13   absolutely thrives on "catfights" and drama, Defendant absolutely intends to

14   capitalize on Plaintiff's former relationship and allowing the viewers to think that

15   they will get to see parts of the "tumultuous relationship" unfold, when in fact they

16   will not, because Plaintiff, one-half of this nonexistent relationship, is not at all

17   related to the show.

18        **d)   Defendant's Misappropriation Does Not Constitute**

19        **"Incidental Use"**

20        Generally, "incidental use of a plaintiff's name or likeness does not give rise

21   to liability" under a common law misappropriation of likeness claim.  *Yeager*,

22   *supra*, 673 F.Supp.2d at 1100.  "Whether the use of a plaintiff's name or likeness

23   falls within the incidental use exception to liability 'is determined by the role that

24   the use of the plaintiff's name or likeness plays in the main purpose and subject of

25   the work at issue.'"  *Id.* (citing *Preston v. Martin Bregman Prods., Inc.*, 765

26   F.Supp. 116, 119 (S.D.N.Y. 1991)).  The factors that courts consider include: "(1)

27   whether the use has a unique quality or value that would result in commercial

28   profit to the defendant, (2) whether the use contributes something of significance,

(3) the relationship between the reference to the plaintiff and the purpose and subject of the work, and (4) the duration, prominence or repetition of the likeness relative to the rest of the publication." *Id.* (citing *Aligo v. Time-Life Books, Inc.*, 1994 U.S.Dist. LEXIS 21559, *6 (N.D.Cal. Dec. 19, 1994)).  The doctrine of incidental use is generally not applicable—and liability will lie—where a plaintiff's identity is appropriated for the purpose of "taking advantage of [plaintiff's] reputation, prestige, or other value associated with him." *Id.* (citing Restatement (Second) of Torts § 652C, cmt. d).

First, Plaintiff's identity as a basketball celebrity has a unique quality or value that results in greater marketability of the "Basketball Wives" show. Second, Defendant's use of Plaintiff's identity is significant, as use of basketball players' identity is the draw of the show.  Third, the purpose of the use of Plaintiff's identity is again to draw more viewers to the show and increase advertising revenue.  Fourth, due to the title of the show, Plaintiff's identity is misappropriated every time Govan is featured in the show, which will likely be significant, as she is a named participant in the official press release.  As it is exactly Plaintiff's reputation and prestige that Defendant wishes to take advantage of, Defendant cannot claim that their use of Plaintiff's identity is merely "incidental."

## 2.   Plaintiff's Right of Publicity Claims Have a Reasonable Probability of Prevailing on the Merits

As shown above, because Defendant's speech is not protected by the First Amendment and is not made "in connection with a public issue," Defendant's special motion to strike should be denied; there is no need to assess whether Plaintiff's right of publicity claims have a reasonable probability of prevailing on the merits. *See Hilton*, *supra*, 599 F.3d at 901-02.  Nevertheless, Plaintiff can show that he will has a reasonable probability of prevailing on the merits.

///

1   The "reasonable probability of prevailing on the merits" standard is a lot

2   more lenient than the preliminary injunction "likelihood of success" standard.

3   *Schering Corp. v. First DataBank, Inc.*, 2007 U.S. Dist. LEXIS 50164, *28 (N.D.

4   Cal. Apr. 20, 2007).  Plaintiff need only to prove that a "reasonable jury" could

5   find in his favor.  *Id.* (citing *Metabolife Int'l v. Wornick*, 264 F.3d 832, 840 (9th

6   Cir. 2001)).  "In ruling on a motion to strike, the trial court does not weigh the

7   evidence or determine questions of credibility; instead the court accepts as true all

8   of the evidence favorable to the plaintiff."  *Id.* at *29.  "[T]he anti-SLAPP 'statute

9   poses no obstacle to suits that possess minimal merit.'"  *Id.* (citation omitted).

### a)   The Common Law Misappropriation of Likeness Claim Will Reasonably Prevail on the Merits

12   A common law cause of action for appropriation of name or likeness

13   requires a plaintiff to show the following:  (1) the defendant's use of plaintiff's

14   identity, (2) the appropriation of plaintiff's name or likeness to defendant's

15   advantage, commercially or otherwise, (3) lack of consent, and (4) resulting injury.

16   *Abdul-Jabbar v. General Motors Corp.*, 85 F.3d 407, 413-14 (9th Cir. 1995)

17   (citations omitted).  A reasonable jury may find that all elements exist here.

### (1)   Defendant Uses Plaintiff's Identity

19   Under California common law, the "right of publicity is not limited to the

20   appropriation of name or likeness…[t]he key issue is appropriation of the

21   plaintiff's *identity*."  *Id.* at 415.  As shown in the cases below, "identity" is broadly

22   construed, and the explicit use of a celebrity's name or face is not necessary.

23   In *Motschenbacher v. R. J. Reynolds Tobacco Co.*, 498 F.2d 821, 822 (9th

24   Cir. 1974), Lothar Motschenbacher, a professional driver of race cars, appealed

25   from the district court's order granting summary judgment in favor of defendants

26   for his common law misappropriation of likeness claim, among other claims.

27   Defendants had used a photograph containing Mr. Motschenbacher.  *Id.*  Mr.

28   Motschenbacher's facial features were not visible, and the defendants had partially

-13-

altered the appearance of the driver's race car, including changing the number "11" to "71," adding a spoiler to the car, adding the word "Winston," and removing other advertisements and logos from the car. *Id.* Nevertheless, the appellate court found that Mr. Mostchenbacher's likeness could have been misappropriated: "Having viewed a film of the commercial, we agree with the district court that the 'likeness' of plaintiff is itself unrecognizable; however, the court's further conclusion of law to the effect that the driver is not identifiable as plaintiff is erroneous in that it wholly fails to attribute proper significance to the distinctive decorations appearing on the car. As pointed out earlier, these markings were not only peculiar to the plaintiff's cars but they caused some persons to think the car in question was plaintiff's and to infer that the person driving the car was the plaintiff." *Id.* at 827.

In *Carson v. Here's Johnny Portable Toilets, Inc.*, 698 F.2d 831, 837 (6th Cir. 1983), where defendants sold "HERE'S JOHNNY" portable toilets, the appellate court stated that "a celebrity's identity may be appropriated in various ways. It is our view that, under the existing authorities, a celebrity's legal right of publicity is invaded whenever his identity is intentionally appropriated for commercial purposes…. It is not fatal to appellant's claim that appellee did not use his 'name.' Indeed, there would have been no violation of [Johnny Carson's] right of publicity even if appellee had used his name, such as 'J. William Carson Portable Toilet' or the 'John William Carson Portable Toilet' or the 'J.W. Carson Portable Toilet.' The reason is that, though literally using appellant's 'name,' the appellee would not have appropriated Carson's identity as a celebrity. Here there was an appropriation of Carson's identity without using his 'name.'"

In *White v. Samsung Electronics America, Inc.*, 971 F.2d 1395, 1396 (9th Cir. 1992)., defendants ran an advertisement that "depicted a robot, dressed in a wig, gown, and jewelry which [defendant] consciously selected to resemble [Vanna] White's hair and dress. The robot was posed next to a game board which

-14-

is instantly recognizable as the Wheel of Fortune game show set, in a stance for which White is famous."  The appellate court reversed the district court's grant of summary judgment as to the common law misappropriation of likeness claim, stating that:  "Viewed separately, the individual aspects of the advertisement in the present case say little.  Viewed together, they leave little doubt about the celebrity the ad is meant to depict."  *Id.* at 1399.

Here, Defendant has appropriated Plaintiff's identity.  The show is titled, "Basketball Wives: Los Angeles."  The official press release for the show informs the public that the show will feature "the wives and girlfriends of players," introduce "a group of dynamic women with relationships to some of the biggest basketball players in the game," "dive into the real-life locker room of these leading ladies, giving viewers a never-before-seen look at what it takes to live in La La Land and be connected to a famous professional athlete," and "follow these women as they attempt to juggle their relationships [with the athletes]."  *See* Amato Decl. Ex. A.  Govan is a named participant of the show.  *Id.*  While the press release creatively avoids stating Plaintiff's name (presumably due to pre-litigation communications, as the other athletes are named), it takes less than one leap of the imagination to know that Defendant refers to Plaintiff as one of the referenced athletes.  Indeed, within the same day of the official press release, other media outlets caught on to the connection, and disseminated Plaintiff's name to Defendant's benefit.  *See* Amato Decl. Exs. A, C, D.  "A rule which says that the right of publicity can be infringed only through the use of nine different methods of appropriating identity merely challenges the clever advertising strategist to come up with the tenth."  *White*, *supra*, 971 F.2d at 1398.  Defendant here has come up with the tenth—though Defendant does not use Plaintiff's name, the very title of the reality television show, coupled with Govan's involvement, uses Plaintiff's identity.

///

-15-

1

2

*(2)    Defendant Misappropriates Plaintiff's Identity to Its Advantage*

3     Merely "attracting television viewers' attention" constitutes gaining an

4   advantage. *Abdul-Jabbar*, *supra*, 85 F.3d at 415.  Here, the "Basketball Wives"

5   show is predicated on the connection to NBA players, and Defendant gains an

6   advantage by attracting potential viewers' attention with the use of Plaintiff's

7   identity.  As mentioned above, Defendant intentionally leverages the interest

8   associated with professional basketball and basketball players to generate more

9   viewership, ratings, and revenue—all by exploiting Plaintiff's identity.  Therefore,

10   Defendant trades on Plaintiff's identity to its advantage.

11

12

*(3)    Plaintiff Did Not Consent to Defendant's Misappropriation*

13     While it is likely that the NBA players whose actual spouses and fiancées

14   consent to the use of their identities for the "Basketball Wives" show (perhaps in

15   order to aid them in becoming television personalities), Plaintiff has not consented

16   to Defendant's misappropriation of his identity.  Arenas Decl. ¶ 8.

17

18

*(4)    Defendant's Misappropriation Results in Injury to Plaintiff*

19     "Television and other media create marketable celebrity identity value.

20   Considerable energy and ingenuity are expended by those who have achieved

21   celebrity value to exploit it for profit.  The law protects the celebrity's sole right to

22   exploit this value." *White*, *supra*, 971 F.2d at 1399.  "Generally, the greater the

23   fame or notoriety of the identity appropriated, the greater will be the extent of the

24   economic injury suffered." *Motschenbacher*, *supra*, 498 F.2d at 825 (citations

25   omitted).  Here, Plaintiff has been building his identity as an NBA player for

26   approximately one decade, and as a basketball player for even longer.  Arenas

27   Decl. ¶ 3.  Plaintiff has the sole right to exploit the value of his identity and

28

-16-

1   celebrity, the value of which is, like his fame, extremely high.  Defendant should

2   not be able to exploit this value without compensating Plaintiff.

3        In addition, the entertainment industry commonly compensates celebrities or

4   individuals for their "life story rights."  *See Marder v. Lopez*, 450 F.3d 445, 452

5   (9th Cir. 2006) (dispute involving a release clause that granted a movie studio to

6   use the plaintiff's "life story rights").  Defendant's use of Plaintiff's identity, as it

7   is marketed to create the impression that the "Basketball Wives" show will provide

8   an insider look into the private life of Plaintiff through Govan, not only deprives

9   Plaintiff compensation for his "life story rights," it diminishes the value of

10  Plaintiff's rights—it's basic economics:  too much supply diminishes demand.

11       Further, not only economic damages are at stake:  "it is quite possible that

12  the appropriation of the identity of a celebrity may induce humiliation,

13  embarrassment and mental distress."  *Motschenbacher*, *supra*, 498 F.2d at 825

14  (citations omitted); *see also Abdul-Jabbar*, *supra*, 85 F.3d at 416 ("Injury to a

15  plaintiff's right of publicity is not limited to present or future economic loss, but

16  'may induce humiliation, embarrassment, and mental distress.'") (citations

17  omitted).

18       The "Basketball Wives" franchise is one that prides itself on its coarse brand

19  of drama, "cat fights," and "infidelity issues"—just to name a few.  *See* Amato

20  Decl. Exs. A, B.  Defendant's use of Plaintiff's identity to associate Plaintiff with

21  such a disreputable show will lessen Plaintiff's reputation for something that is

22  otherwise completely unrelated to Plaintiff.

23       As shown above, Defendant's misappropriation of Plaintiff's identity results

24  in injury to Plaintiff, and a reasonable jury may find that Defendant has

25  misappropriated Plaintiff's identity under California common law.

26  ///

27  ///

28  ///

1

2

**b)      The Statutory Misappropriation of Likeness Claim Will Reasonably Prevail on the Merits**

3      A defendant may be liable for commercial misappropriation if it "knowingly

4  uses another's name, voice, signature, photograph or likeness in any manner, on or

5  in products, merchandise, or goods or for purposes of advertising or selling, or

6  soliciting purchases of products, merchandise, goods or services, without such

7  person's prior consent."  Cal. Civ. Code § 3344(a).  While it is true that the

8  statutory misappropriation claim is narrower than the common law

9  misappropriation claim, a reasonable jury may also find that Plaintiff has presented

10  a claim for statutory misappropriation of likeness.  *See Slivinsky v. Watkins-*

11  *Johnson Co.*, 221 Cal.App.3d 799, 807 (Cal.Ct.App. 1990).

12      While Defendant avoids using Plaintiff's name in current press releases, one

13  of Defendant's witnesses admits that it is possible that Defendant may use

14  Plaintiff's name in the future.  Acord Decl. ¶ 4, 6:22-24.  And Defendant's current

15  avoidance is merely a creative way to refer to Plaintiff.

16      Defendant cites to *Midler v. Ford Motor Co.*, 849 F.2d 460, 463 (9th Cir.

17  1988) and *White*, *supra*, 971 F.2d at 1397, but neither case is dispositive of the

18  current issue.  In the *Midler* case, the court found no statutory appropriation of

19  likeness of Bette Midler because the actual voice used was a soundalike.  *Midler*,

20  *supra*, 849 F.2d at 463.  In the *White* case, the court found no statutory

21  appropriation of Vanna White's likeness in the mechanical features of the robot.

22  *White*, *supra*, 971 F.2d at 1397.  However, in *Wendt v. Host International, Inc.*,

23  125 F.3d 806, 810 (9th Cir. 1997), the Ninth Circuit explained that it "specifically

24  held open the possibility that a manikin molded to Vanna White's precise feaures,

25  or one that was a caricature or bore an impressionistic resemblance to White might

26  become a likeness for statutory purposes…The degree to which these robots

27  resemble, caricature, or bear an impressionistic resemblance to appellants is

28  therefore clearly material to a claim of violation of Cal. Civ. Code § 3344."

-18-

1    Here, Defendant actually refers to Plaintiff himself, not a lookalike,

2  soundalike, or even a caricature, and Defendant admits that it may in the future

3  directly use Plaintiff's name.  Defendant also knowingly refers to Plaintiff in

4  advertising for the show by using Govan's name in conjunction with the show title

5  "Basketball Wives: Los Angeles" and promising potential viewers a glimpse into

6  Plaintiff's life and "tumultuous relationship" with Govan.  Defendant knows that

7  the rest of the media world and Internet will make the connection on its behalf.  As

8  discussed above, Defendant's use is nonconsensual and has caused Plaintiff

9  damages, and Defendant's use is not protected by the First Amendment.

10    Therefore, a reasonable jury may find that Defendant misappropriated

11  Plaintiff's name and/or likeness pursuant to Cal. Civ. Code § 3344.

12  **C.    Should the Special Motion to Strike Be Granted, Leave to Amend**

13  **        Should be Also Granted**

14    "[G]ranting a defendant's anti-SLAPP motion to strike a plaintiff's initial

15  complaint without granting the plaintiff leave to amend would directly collide with

16  Fed. R. Civ. P. 15(a)'s policy favoring liberal amendment."  *Verizon Delaware,*

17  *Inc. v. Covad Communications Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004).

18    Though Plaintiff respectfully requests that this Court deny Defendant's

19  special motion to strike in its entirety, should this Court not do so, Plaintiff

20  respectfully requests leave to amend.

21  ///

22  ///

23  ///

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## IV.   CONCLUSION

For the above enumerated reasons, Plaintiff respectfully requests that this Court deny Defendant's special motion to strike.  Should this Court grant Defendant's special motion to strike in part or in whole, Plaintiff respectfully requests leave to amend the complaint.

Dated:  August 8, 2011                             Respectfully submitted,
                                                   GORDON & REES LLP

                                          by    s/Richard P. Sybert/
                                                C. Anthony Mulrain
                                                Richard P. Sybert
                                                Yuo-Fong C. Amato
                                                Attorneys for Plaintiff
                                                GILBERT J. ARENAS

AREN/1070048/10265279v.1